We will hear from the first case, which is 21-1361, Bay v. Anadarko E&P Onshore. Counsel for Appellant, please make your appearance and proceed. Good morning, Your Honors. I am George Barton, and I'm arguing today for the Appellants Mildred and Marvin Bay. The primary issue in this appeal is whether the District Court erred in failing to apply the material interference standard, which was specifically adopted by the Colorado Supreme Court in its 1997 decision in Geraghty v. Magnus. That material interference standard, as announced by the Colorado Supreme Court in 1997, is whether or not a material interference has occurred by the mineral operator that is such that it basically causes interference from the perspective of the surface zone, which is not reasonable for the operator to access the mineral estate. The standard that was instead applied by the District Court is a standard under which the mineral owner's conduct makes it nearly impossible and infeasible for the surface owner to use its surface estate in any manner. Counsel, this case was proceeding on remand after Bay 1, right? That is correct. And we said in Bay 1 that the proper interpretation and application of Geraghty was essential to deciding the case. So how can any part of our decision in Bay 1 be considered not binding on the District Court? Well, I think that the Tenth Circuit's decision in Bay 1 is binding on the District Court, and that the Tenth Circuit in Bay 1 did not make a definitive decision as to what constitutes material interference. What happened in the Bay 1 opinion is that the Tenth Circuit made reference to the standard that was articulated by the Supreme Court of Colorado in its 1997 decision in Geraghty and recited that material interference standard, which I just referenced. It then pointed out that there had been citation to the Getty decision that was decided earlier by the Texas Supreme Court, and it made some statements about what the Texas material interference standard is. It then concluded that it wasn't making a definitive decision as to whether the material interference standard that had been adopted by the Supreme Court of Colorado in Geraghty should be applied or whether or not the Texas standard should be applied because, and I quote, Anadarko has not raised that issue on appeal. So that issue was not definitively decided by the Tenth Circuit in Bay 1. But what we've done in looking at it in our briefing, as your Honor knows, is we have gone back and said, okay, let's look at the two citations to the Getty decision that the Geraghty court made in 1997. There were two references to Getty. The first reference was that in Getty, they were citing to Getty for the proposition that the mineral owner has a duty to conduct its mineral activities in a manner that provides due regard to the surface owner and that there is a duty to minimize intrusion and surface damage to the fullest extent possible. That was the first citation to Getty and the primary one. The second citation to the Getty decision by the Geraghty court was to the fact that the surface owner, after the mineral owner presents its evidence that it acted reasonably or with necessity, that the mineral owner has the option of presenting evidence that there were reasonable alternatives available to the mineral operator, which it could have used, which would have reduced the effect of surface damage to the surface owners. Those were the two citations to the Getty decisions and the only two citations. Mr. Barton, if we were operating on a blank slate and we were trying to discern what Geraghty meant, I think that analysis would be commendable. The problem is we're not operating on a blank slate. It seems to me that when you look at Bay 1, the court did not apply the material interference standard because it did not have briefing on it, but it articulated that standard. And so why isn't that articulation law of the case? There are many times when we decide that we are going to let the district court in the first instance apply a standard, but we articulate it. That doesn't make the standard, it doesn't make it dicta just because we don't choose to apply it in that case, does it? I respectfully suggest in this case it does. Recall Judge Holmes. Well, what makes this case unusual aside from the cases that I was alluding to hypothetically or in general in which we articulate a standard and then we say district court apply it? Well, it seems to me that we did exactly the same thing here. What is different about the text of this Bay 1 decision or otherwise that would suggest we were not doing that? I think what occurred in Bay 1 is that this court acknowledged what the Garrity standard was. It acknowledged it referenced the Garrity standard and specifically that a material interference with surface use for the purpose of establishing a prima facie case is an interference which is not reasonable from the perspective of the surface owner and considering only the impact on the surface use. That's a direct quote from Bay 1. It did acknowledge the Garrity standard, but then under the section called surface owner's prima facie case, it went on to articulate what that means here, what that means in this context. Now, whether that is wrong or right, the fact of the matter is we did it. And so it's not clear to me at all looking at that language, and as I said, with the backdrop or the background principle that a lot of times we articulate standards and we don't choose to apply it. Well, when I'm looking at this language here, it looks like we're saying, okay, well, this is what you will do. And then it uses this language about high bar. Material interference is a high bar. Well, it says what it says. How do we get out from under that? Because ultimately this court in Bay 1 specifically stated that it was not resolving the issue because it had not been raised on appeal. Well, as I said before, there's a difference between saying you're not resolving an issue because there's not briefing on it. That doesn't mean that you aren't articulating a standard that would guide the district court below, which is exactly what the district court here perceived itself to be doing, to being guided by our standard. Well, I think ultimately here what we have done is gone back and cited to the Gary decision. And what it says is that a mineral owner has a responsibility to engage in its mineral production activities in a manner that is designed to minimize intrusion to the fullest extent possible. Well, Mr. Barton, then, going back to Bay 1, and I'm at the same place in the opinion that Judge Holmes was referring to, the surface owner's prima facie case, second paragraph, this court said the Getty case cited in Garrity provides further guidance on what effects create material interference and suggests that surface use must be infeasible or nearly impossible under the circumstances. That's what this court said insofar as the Texas case providing further guidance on what Garrity means. Why isn't that law of the case? I don't consider it law of the case because which standard should be applied? Garrity. Garrity? We'll say Garrity, but this court said that Getty provides further guidance on Garrity. Do you disagree with that? I don't disagree that that statement was made. No, do you disagree that Getty provides further guidance on Garrity? As to the material interference standard, I do, Judge Mansfield. But then are you asking us to go back on what the previous panel of this court has already said? Well, I understand where the court's going with this. I would suggest that even regardless of even the high bar standard, what we're dealing with here is a situation where there was a reasonable alternative available to Anadarko under which it would have drilled five fewer wells, and they would have had, instead of seven well sites, there would have been only two well sites. Because as this court found in Bay 1, the bays had presented sufficient evidence to show that there was a reasonable alternative of directional drilling that was available to Anadarko. And what the net result of that was is because Anadarko did not engage in the directional drilling which had been specifically requested by the bays, it resulted in 12.5 acres of their surface that was not accessible to them, that was not available to them. And under either standard, on any standard, that was sufficient evidence. Yeah, well, let's stop there. Because under either standard, you did not make an argument, did you, under the high bar standard. There's no briefing on, well, if the district court was right in its construction of Garrity, and if that language is not dicta, I still win. I don't recall seeing that in your brief. Is that in your brief? That is in our brief. What is in our brief is we presented to the evidence that that was a submissible case of trespass. Because here's what really happened with respect to the district court's analysis. And this is pointed out in our brief. It's clear from the district court's opinion. The district court basically said, well, I'm not going to focus on the 12.5 acres that the bays were deprived of because of the utilization of the more intrusive method of production. I'm going to focus on the fact that even though, even given the fact that there was 12.5 acres, a surface that was taken from the bays as a result of Anadarko's failure to use the directional drilling, that there was still other surface that the bays could have used. That's not the right analysis. Well, that begs the question of whether it's the right analysis. That is the analysis the court applied. And when I'm looking at the high bar standard, the surface owner has the burden to prove that the lessee's use completely precludes or substantially impairs the existing use. Did you make an argument in your brief that this... Yes, we did. We made an argument that what you have to look at is that which was deprived, that the royalty owners were deprived of, which was 12.5 acres of surface that resulted directly from the utilization of the less reasonable method of producing... Counsel, did Judge Krieger err by preventing you on remand from developing evidence under the new standard? Yes. Did you make that argument? Yes, we made that argument in front of Judge Krieger, and we said again... You didn't make that argument in response to the briefing order, right? But you didn't make it here. In other words, you're not contending that there's reversible error, separate and apart from your construction of Bay 1. You're not contending that the district court erred by not allowing you to present further evidence in conformity with the rule announced in Bay 1. Is that right? What we are arguing, Judge Rossman, is that there was sufficient evidence to show material interference under any conceivable standard because of the fact that what happened here was that, as a result, that clearly Anadarko had the option of directional drilling. Anadarko instead resorted to drilling seven vertical wells, five more than was reasonably necessary. I just want to make sure I understand. When you presented evidence in the trial, it was to conform to the material interference standard as announced in Garrity, and that's the standard that you say applies now. Is that right? That's true. Okay. But you're saying that that same evidence sufficiently satisfies the HIGAR standard as well, so you did not need to present new evidence. Is that your argument? It's our evidence that the first trial would have been sufficient to satisfy the HIGAR standard. I notice that my time is up. I'd like to reserve about a minute, unless there's further questions. We'll see how things go.  All right. Thank you. Please. Please. May it please the Court. The District Court did exactly what this Court instructed it to do. It conducted further proceedings consistent with the prior panel's opinion in Bay 1, and it concluded there was insufficient evidence of a material interference. It is the prior panel's opinion in Bay 1 explaining the material interference standard and that it requires that oil and gas operations completely preclude or substantially impair surface use that appellants attack in this appeal. That attempt to relitigate Bay 1 fails, and the District Court's order should be affirmed for three primary reasons. First, Bay 1 is the law of the case, and appellants have provided no grounds to overrule the prior panel. Second, the District Court's order reflects a faithful application of the material interference standard explained in Bay 1, which is the same standard articulated by the Colorado Supreme Court in Garrity. And third, despite opportunities to do so, appellants have failed to come forward with evidence beyond the inevitable inconveniences of a split estate where the mineral owner is legally entitled to occupy reasonable portions of the surface for drilling. Appellants have not demonstrated a material interference with their ongoing and continual farming under any standard. You say under any standard, and this is sort of a softball question, but is it your understanding that they made an argument on appeal that they could survive under the high bar standard? I don't recall seeing that. I agree with Your Honor that they did not make that argument. I agree with Judge Rossman that they have not made an argument that they should be entitled to present more evidence, and I agree with Judge Holmes that they have not made an argument that they can meet the high bar. The only argument that they've made is that under a subjective standard, they should be allowed to pass the first step of the prima facie case. But Geraghty is not a subjective test. We can see that most clearly in the language of Geraghty itself, which first talks about the burden to bring forth evidence that the material interference is unreasonable, an objective standard. Geraghty further suggests the type of objective evidence that might satisfy a plaintiff's prima facie burden by talking about a statutory or regulatory standard of care and the evidence that must be presented to meet that standard of care. But in all cases, actual evidence is required. Plaintiff's subjective belief is not enough. Finally, Geraghty instructs us to look at the interference and whether it's unreasonable from the perspective of the surface owner, considering only the effects on the surface. That's different than a subjective test. That's the perspective of the surface owner, considering only the effects on surface use, is a reference to the particular plaintiff's use of their surface and how that's impacted. Well, there was testimony from Mr. Bay about impact that was caused by this drilling. I mean, it's not like this is made up. I mean, he suggested that there was an exclusion, as we heard today, from acres of land. There were other issues that I won't take the time to pull up now, but I recall that he did offer testimony, did he not? About the impact, detrimental impact on his land of this drilling mechanism. Your Honor is correct. Mr. Bay did testify as to the inconveniences that he has suffered as a result of the oil and gas operations. But on that point, Judge Krieger expressly stated on page 11 of Addendum A, Anadarko's ownership of the mineral estate entitles it to occupy reasonable portions of the surface estate, an occupation that, by definition, will result in some losses to the bays. And that point by Judge Krieger is an important one because it explains why the prior panel in Bay 1 observed that the Prima Facie case is a high bar. And that's language. Let me stop you right there. So is an observation the same thing as a legal rule? You know, when I look at Garrity, I'm sorry, I look at Bay 1, it sort of seems to break down into two parts. One part is just descriptive. It's just the description of the legal rule on material interference, which is the same thing you contended was the applicable standard in your jury instructions, right? You had no quibble with the first part of how we articulate material interference exactly under Garrity. That was your jury instruction in the first trial, right? The jury instruction did talk about the requirement of material interference. And just described it just like we do in Bay 1 in that first part of the surface owner's Prima Facie case. And then after that, it seems that the case Bay 1 is talking about examples of what would satisfy the standard. Aren't those different things? Isn't the articulation of the rule different from just providing suggestions and guidance and examples of sort of the factual parameters? I mean, we were searching for affirmance on alternative grounds. This was in service of that, right? So you don't see that distinction? Tell me why I shouldn't see that distinction. I would agree with what Judge Holmes articulated earlier, that that is all part of the articulation of the legal standard. The only thing Bay 1 could not reach is the application of that standard to the facts of this case. And that's why it remained to the district court. And that's when Judge Krieger said, there's going to be some level of interference. That's the nature of this case. This is not an ordinary trespass case. This is not a case where someone has stumbled onto someone else's land or someone has built a fence encroaching. We're talking about a case where it is black-letter law that the mineral owner has the absolute right to be there and to drill on that portion of the surface estate that is reasonably necessary to develop its valuable minerals. That is why, in this context, Garrity recognizes that it must be a material interference. It recognizes that mere inconveniences are not enough. And to Judge Holmes' point, all Mr. Bay was able to articulate are mere inconveniences. Could I just ask for clarification on your briefing? And I may have this wrong, but it seems to suggest that you're arguing that the Bays concede that there was insufficient evidence of trespass. Is that what you were trying to argue? Your Honor, what we were trying to suggest is that under the actual standard articulated in Bay 1, which is an explanation of Garrity, the same standard, the Bays have not presented or even argued that they can meet that standard. They have only argued in their briefing that this Court must adopt some new standard not present in Bay 1 that they can meet. That's how we read their briefs. All right. But you're not arguing there was a concession, an affirmative concession. No, not an affirmative concession, Your Honor. Just a lack of, as we started off talking about, a lack of an argument that they should be able to present more evidence, a lack of an argument that they meet the high bar standard. Do you think that Bay 1 is inconsistent with Garrity? No, Your Honor. Why not? Bay 1 is consistent with Garrity. Garrity states that when the operations of a lessee or other holder of the mineral rights would preclude or impair uses by the surface owner, the doctrine of reasonable surface use requires the lessee to adopt an alternative means. The prior panel similarly held, after analyzing Garrity, that to establish a trespass claim, the Bays must show that oil and gas operations completely preclude or substantially impair their surface use.  The adverbs completely and preclude are not the same? Completely preclude and preclude aren't the same thing? There is no difference between a surface use that has been precluded and one that has been completely precluded. And if the Bays are suggesting that an immaterial interference is enough, that's inconsistent with Garrity because Garrity teaches us that mere inconveniences are not enough. And interference and substantial interference, there's no difference between those two concepts either? Again, I think substantial interference refers to the fact that we're talking about a material interference. And so an immaterial interference or an insubstantial interference is not enough. And Merriman postdates Garrity, right? Merriman does postdate Garrity, Your Honor. So you're contending that the Bay 1 reference and discussion of Merriman is part of the legal rule articulated in Garrity? I think, Your Honor, was right on when we talked about how Bay 1 court uses Merriman and Getty as a way to apply the facts of the case because the Colorado Supreme Court did not get to an application of the facts in Garrity. It articulated the standard and it remanded. There is no indication, contrary to what we see in Appellant's brief, that there was ever a material interference in Garrity. I'm sorry, I keep asking the same question because this is where I'm stuck. But you don't see the discussion of those cases as in service of sort of factual benchmarks by which we can or the panel in Bay 1 could sort of situate the facts that were presented at that trial. You don't see those as sort of factual benchmarks that are distinct from the articulation of the legal rule? I do see them as factual benchmarks, Your Honor. I don't see them as distinct from the rule. I think it was a way, as Judge Mathison said earlier, as further guidance and the juxtaposition of what happened in the facts of Getty and the facts of Merriman is further guidance on what the material interference standard means. So in Getty, on the one hand, we had a case where the wells were too high for the center pivot sprinkler to pass overhead. There was testimony and evidence in that case that the wells could have been buried or built lower as not to interfere with the sprinklers. And there was also evidence that the farmer didn't have an alternative way of irrigating the farm. And so the Getty court found that to be a material interference. In Merriman, on the other hand, the facts were that there was a cattle rancher who simply preferred to load his animals from a specific location, but there was no evidence that he couldn't do that from another location. And so there was no evidence that his ranching operations had been materially interfered with. And I think, to answer Your Honor's question, that was the point in Bay 1 of using those factual circumstances to help further guide the district court as to what exactly Bay 1 and Garrity mean. And that's exactly what the district court did. Appellant's request of this court to overturn the prior panel now is untimely, and it's contrary to law. It's untimely because the bays did not petition for rehearing after the Bay 1 decision, and it's not something the court should consider now, because the material interference standard articulated in Bay 1 is exactly the type of issue that then-Judge Gorsuch concluded cannot be relitigated in his opinion in NTEC because it has already been expressly or implicitly resolved by this court. But material interference was not litigated in Bay 1. I mean, it was the discussion of the material interference prong of Garrity was in service of searching for affirmance on alternative grounds. It was not litigated in the case. Do you agree with that? I do agree that it was not one of the main subjects of the litigation. It was not part of the appeal. It was not part of the appeal. You didn't have a problem with it. When you're walking in the courthouse door in Bay 1, you didn't have a problem with the material interference standard as articulated in the trial. Correct, because the trial court correctly applied the Garrity standard requiring material interference. And so we changed the Garrity standard? No. The Garrity standard and the Bay 1 standard are the same. The issue, I think you can see that in Bay 1 in a couple of places, because not only does the Bay 1 court address Garrity in the section that you're referring to, trying to affirm on alternative grounds, but it references the Garrity decision earlier on and says that it was essential to deciding its case. It talks about the way that in examining whether the district court was correct to modify the Garrity standard, the Bay 1 court necessarily had to define what the Garrity standard was. It was in that context that the Bay 1 court noted that the Garrity case relies upon Getty and that the Bay 1 court also noted that the framework in Garrity mirrors that in Getty. So there was not just the application or the issue of whether the district court could affirm on other grounds, but the Bay 1 court, as it said, it was essential to that court that it analyze and explain the Garrity ruling in full, including the first step of the prima facie burden. Your Honors, in conclusion, the district court correctly applied the law of the case regarding the material interference standard, and this court should not overturn the prior panel. That standard requiring evidence that the existing surface use be completely precluded or substantially impaired is the same standard from Garrity. Where an operator has a legal right to drill upon the surface, the bays have simply failed to come forward with any evidence that goes beyond mere inconveniences in their ongoing farming operations. Accordingly, Anadarko respectfully requests the court affirm the district court's decision to grant judgment of a matter of law in its favor. Thank you. Would you give Mr. Barden one minute, please? I want to refer specifically to one part of the Garrity decision, which clearly was not really, it wasn't questioned by the Tenth Circuit, and it's the due regard concept, and it's talked about at page 17 of our brief. The due regard concept requires mineral rights holders to accommodate surface owners to the fullest extent possible, consistent with their right to develop the mineral state. There's another direct quote. In its necessary use of the surface, the operator has a responsibility to exercise its privilege reasonably in a manner designed to minimize intrusion and surface damages. When it fails in that responsibility, it commits a trespass. Both of those statements have a bearing on this whole material interference subject matter. And essentially what happened here was, is there were reasonable alternatives available to the operator in the form of directional drilling. The operator elected not to adopt those, and the result was the operator drilled seven vertical wells, which was five excessive wells under the evidence that was presented at the first trial. Under any conceivable standard, that constitutes a material interference. And the evidence was, and it was not contradicted, that that resulted in the surface owners losing 12.5 acres of their land that they otherwise would have had, but for the operator's election to drill seven vertical wells. Thank you for your argument. Thank you, Mr. Barton. Thank you for your arguments, counsel. The case is submitted.